UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **VERONICA WILLIAMSON,**<br><br>**Plaintiff,**<br><br>v.<br><br>**NEWARK PUBLIC SCHOOLS, MARION A. BOLDEN,** State District Superintendent, Newark Public Schools, **LYDIA SILVA,** Assistant Superintendent, School Leadership Team IV, **ROY T. WILSON,** Principal, Dr. E. Alma Flagg Elementary School,<br><br>**Defendants.** | MASTER FILE: 05-CV-4008 (WJM)<br><br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

Emily B. Goldberg
Seton Hall Law School, Center for Social Justice
833 McCarter Highway
Newark, NJ 07102

Shavar D. Jeffries
Seton Hall Law School
Center for Social Justice
833 McCarter Highway
Newark, NJ 07102

(*Counsel for Plaintiff*)

Cherie L. Adams
Adams Stern Gutierrez & Lattiboudere, LLC
744 Broad Street, Suite 1600
Newark, NJ 07102

(*Counsel for Defendants*)

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff and Defendants have filed **CROSS-MOTIONS FOR SUMMARY JUDGMENT** on nearly all of the claims and counterclaims in this suit. Plaintiff asserts several free speech and assembly claims against all Defendants under both the New Jersey and U.S. Constitutions. Defendant Roy Wilson asserts counterclaims for defamation and malicious prosecution. With respect to all of the foregoing claims, material issues of fact preclude any adjudication on summary judgment. Accordingly, the motions are **DENIED**.

**I.  FACTS**

At its core, this is a free speech dispute. Plaintiff is Veronica Williamson, the mother of a former student at Dr. E. Alma Flagg Elementary School ("School"). She alleges that Defendant Roy T. Wilson, the School's Principal, unconstitutionally interfered with her right to criticize him and the School.

**A.  The Main Dispute**

The main dispute concerns events that occurred during the 2004–2005 school year. That year, Williamson's son was in the sixth grade at the School, and Williamson was the President of the Parent Teacher Student Organization ("PTSO"). Early in the school year, Williamson, as PTSO President, began to criticize the School's performance and safety. By the end of the school year, Wilson had taken three different measures that effectively muted Williamson's criticism: (1) Wilson repeatedly banned or removed Williamson from the School, preventing her from meeting with teachers, (2) Wilson prohibited

2

Williamson from distributing PTSO flyers during a School talent show, and (3) Wilson cancelled a PTSO meeting scheduled at the School. Williamson alleges that Wilson intended these measures to silence her criticism, although Wilson presents a different story.

### 1. Williamson's Ban from the School

The parties agree that on several occasions Wilson removed or banned Williamson from the School. However, they vigorously dispute the reason.

According to Williamson, Wilson removed and banned her because she publicly criticized him and the School. Williamson claims that she generally followed the School's visitation policy and that Wilson was hostile towards her.

According to Wilson, however, Williamson was removed and banned because she caused a major disturbance. Wilson contends that Williamson interrupted her son's classes, violated the School's visitation policies, and threatened teachers and administrators.

### 2. Wilson's Prohibition on Flyer Distribution

The parties agree that during a School talent show, Wilson stopped Williamson's son from distributing PTSO flyers. Again, they dispute the reason.

According to Williamson, Wilson precluded the flyer distribution because he believed the flyers contained false information about him and the School. She alleges that Wilson singled her out since the School normally allows parents to distribute flyers.

According to Wilson, however, the School never permits parents to distribute flyers at events such as the talent show. Wilson alleges that the School provides alternative times and places in which parents may distribute flyers.

### 3. Wilson's Cancellation of the PTSO Meeting

The parties agree that following a series of particularly contentious encounters between Williamson and Wilson, Wilson cancelled an upcoming PTSO meeting at the School. Once again, the parties dispute the reason.

According to Williamson, Wilson cancelled the meeting to prevent her from criticizing him in front of the PTSO. Williamson notes that the PTSO had held many meetings at the School.

According to Wilson, however, he canceled the meeting to avoid a disruption triggered by recent tension between the School and Williamson. Wilson also notes that the School only permits PTSO meetings on campus insofar as they discuss school- or community-related events. Wilson claims that the PTSO meeting would have ranged beyond these approved topics.

### B.     Subsequent Events

An ancillary dispute arose out of these events. At the end of the school year, Williamson appeared on the local news to talk about the events described above. In her appearance, she alleged that Wilson engaged in the aforementioned actions not only because she criticized him and the School, but also because she refused sexual advances

Wilson had made. Williamson also initiated criminal proceedings against Wilson based on these claims. The criminal charges were eventually dismissed. Wilson disputes Williamson's allegations of harassment.

## II.     PROCEEDINGS

In response to the foregoing occurrences, Williamson filed a complaint against four Defendants: Wilson, the Newark Public School District ("NPS"), Marion Bolden (the NPS State District Superintendent), and Lydia Silva (an NPS Assistant Superintendent). After an earlier motion to dismiss, Williamson retains two types of claims. Both types allege that Defendants violated Williamson's right to free speech and assembly under the New Jersey and U.S. Constitutions.[1] First, Williamson asserts that Wilson's ban, flyer prohibition, and meeting cancellation constituted illegal retaliation for her exercise of protected speech. Second, Williamson asserts that Wilson's flyer prohibition and meeting cancellation constituted illegal prior restraints upon her rights to free speech and assembly. With respect to both types of claims, Williamson alleges that Defendants Bolden and Silva aided in Wilson's illegal conduct and are thus liable as his supervisors. Williamson further alleges that since Bolden and Silva are NPS policymakers, NPS is liable for their actions.

---

[1] As the parties acknowledge, free speech rights under the New Jersey Constitution are generally coterminous with free speech rights under the U.S. Constitution. Hamilton Amusement Ctr. v. Verniero, 716 A.2d 1137, 1141–42 (N.J. 1998) ("Because we ordinarily interpret our State Constitution's free speech clause to be no more restrictive than the federal free speech clause, '[w]e rely on federal constitutional principles in interpreting the free speech clause of the New Jersey Constitution.'") (citation omitted).

5

Wilson counterclaimed. He asserts claims for defamation and malicious prosecution based on Williamson's news appearance and criminal prosecutions.

The parties now file cross-motions for summary judgment.[2] Williamson seeks summary judgment in favor of her free speech and assembly claims and against Wilson's defamation and malicious prosecution counterclaims. Defendants seek summary judgment in their favor on all of Williamson's claims. They also argue that even if Wilson is directly liable for violating Williamson's federal rights to free speech, the other Defendants cannot be held liable for Wilson's violations. Finally, Defendants argue that Williamson entered into a settlement agreement that extinguished her rights to file claims arising out of any denial of Williamson's access to the School between March 16 and April 14.

As the foregoing factual disputes illustrate and as the following analysis explains, summary judgment is not appropriate for any issues presented.

## III. DISCUSSION

### A. Williamson's Retaliation Claims

Summary judgment is not appropriate for Williamson's retaliation claims because the parties dispute facts material to those claims. A free speech retaliation claim comprises three elements: (1) the plaintiff engaged in protected speech, (2) the defendant

---

[2]The parties have also filed cross-motions to strike certain exhibits and attachments in each others' summary judgment motions. Even if successful, however, these cross-motions to strike would not affect the Court's determination of the summary judgment motions. The Court accordingly denies these cross-motions to strike as moot.

took adverse actions against that plaintiff, and (3) a causal link exists between the speech and subsequent adverse actions. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). Here, while it is clear that Williamson's criticism of Wilson and the School was protected speech and that Defendants took adverse action against Williamson, there is conflicting evidence regarding whether Defendants took adverse actions in retaliation for Williamson's speech or for a permissible reason. This is a disputed issue of material fact that precludes summary judgment on Williamson's retaliation claims.

      **B.    Williamson's Prior Restraint Claims**

Disputes of material facts also preclude summary judgment on Williamson's claims that Wilson's flyer prohibition and meeting cancellation operated as prior restraints on her rights to free speech and assembly.

The legal standard for reviewing a prior restraint depends upon whether the speech suppressed would have been in a "public forum" or a "non-public" forum. Public fora are those fora devoted to speech and assembly either by tradition or government fiat. Ark. Educ. Television Comm'n v. Forbes, 523 U.S. 666, 677 (1998). In such fora, any prior restraint on speech carries a heavy presumption against constitutionality. Se. Promotions, Ltd. v. Conrad, 420 U.S. 546, 558 (1975). By contrast, non-public fora are those fora that have never been dedicated to indiscriminate speech by the general public. Gregoire v. Centennial Sch. Dist., 907 F.2d 1366, 1370–71 (3d Cir. 1990). In non-public fora, the government may create prior restraints on speech as long as they are reasonable and

7

viewpoint neutral.  Griffin v. Sec'y of Veterans Affairs, 288 F.3d 1309, 1322–28 (Fed. Cir. 2002); Perry v. McDonald, 280 F.3d 159, 171 (2d Cir. 2001).

In addition, the government may create fora that are public only for some categories of speech or speakers but non-public for others.  United States v. Goldin, 311 F.3d 191, 196 (3d Cir. 2002).  In these "limited public fora," the standard for reviewing prior restraints on speech depends upon whether the speech is of a type for which the government has made the forum public.  If the prior restraint is upon speech for which the government has made the forum public, the restraint must abide by the strict standard for prior restraints upon speech in public fora generally.  If the prior restraint is upon speech other than that for which the government has made the forum public, the restraint must merely survive the less stringent standards of reasonableness and viewpoint neutrality.

Here, the facts do not conclusively establish what kinds of fora the Defendants have established.  Williamson presents facts suggesting that the Defendants placed very few restrictions on flyer distribution or on-campus PTSO meetings.  In contrast, Defendants present evidence that the School never permitted flyer distribution during talent shows and that the School only allowed PTSO meetings on campus for discussion of certain topics.  Thus the parties present disputed issues of material facts with respect to the type of fora the Defendants have established.

The choice of fora for the analysis could be dispositive.  While Defendants' actions are unlikely to survive the harsh standard for prior restraints in public fora, they

may survive the lesser standard for prior restraints in non-public fora: they may be reasonable and—accepting Defendants' version of the facts—viewpoint neutral. Thus, disputed issues of material fact exist with respect to whether Defendants violated Williamson's free speech and assembly rights. Summary judgment on these claims is improper.

### C. Other Defendants' Liability

Disputed issues of material fact preclude summary judgment on the issue of whether Silva or Bolden can be held liable for Wilson's conduct. Supervisors such as Silva and Bolden can be held liable under § 1983 for the violations of their subordinates if they directed the action, had knowledge of the action and acquiesced to it, or acted with deliberate indifference to it. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Here, the parties dispute the extent to which Silva and Bolden were involved in Wilson's actions. Williamson presents evidence that they participated in Wilson's decision while Defendants present evidence that Silva and Bolden played limited roles in Wilson's decisions. Accordingly, this issue is inappropriate for summary judgment.

Disputed issues of material fact also preclude summary judgment on the issue of NPS's § 1983 liability. Municipal organizations are liable for the actions of their policymaking officials. McGreevy v. Stroup, 413 F.3d 359, 369 (3d Cir. 2005). While at least Bolden is very likely a policymaking official, it is not clear that he has violated Williamson's rights, as explained directly above. Accordingly, the issue of NPS's § 1983

liability is inappropriate for summary judgment.

>   **D.   Wilson's Defamation Claim**

Disputed issues of material fact preclude summary judgment on Wilson's defamation claim.  Defamation requires proof by clear and convincing evidence of five elements: (1) the defendant made a defamatory statement of fact, (2) the fact was about the plaintiff, (3) the fact was false, (4) the fact was communicated to a third party, and (5) the defendant acted with actual knowledge of or reckless disregard for the fact's truth or falsity.  Singer v. Beach Trading Co., 876 A.2d 885, 894 (N.J. Super. Ct. App. Div. 2005).  Here, a factual dispute exists with respect to the third element, the truth of Williamson's statements.  Williamson claims that Wilson sexually harassed her and that her statements were thus true, and Wilson claims otherwise.  This is a disputed issue of material fact that precludes summary judgment on Wilson's defamation claim.

>   **E.   Wilson's Malicious Prosecution Claim**

Disputed issues of material fact preclude summary judgment on Wilson's malicious prosecution claim.  Malicious prosecution requires proof of four elements: (1) the defendant instituted a criminal action against the plaintiff, (2) the defendant was motivated by malice, (3) the action lacked probable cause, and (4) the action terminated favorably to plaintiff.[3]  Helmy v. City of Jersey City, 836 A.2d 802, 806 (N.J. 2003).

---

[3]The parties appear to agree that Wilson must also prove an additional element to succeed on his malicious prosecution claim: a "special grievance."  This is incorrect.  Courts in New Jersey impose an additional requirement that the plaintiff in a malicious prosecution case suffer a "special grievance" only if the underlying prosecution was a civil case.  Wozniak v. Pennella,

Here, the parties dispute whether Williamson acted maliciously or without probable cause. Williamson alleges that Wilson indeed did sexually harass her, but Wilson alleges that Williamson fabricated the charges. This is a disputed issue of material fact that precludes summary judgment on Wilson's malicious prosecution claim.

### F.    The Settlement Agreement

On April 11, NPS and Williamson entered into a settlement agreement. Under the agreement, Williamson and NPS agreed to abide by all of NPS's visitation policies. In exchange, Williamson relinquished any legal claims "arising from [her] denial of access to school premises from March 16, 2005 until April 14, 2005." Defendants now argue that the settlement agreement precludes Williamson from asserting claims based on any denial of access to the School from March 16 until April 14.

Once again, the parties present conflicting evidence that precludes summary judgment on this issue. While all of the parties acknowledge the existence and validity of this settlement agreement, Williamson alleges that Defendants materially breached the agreement, excusing her performance thereunder. See Nolan ex rel. Nolan v. Lee Ho, 577 A.2d 143, 146 (N.J. 1990) ("When there is a breach of a material term of [a settlement] agreement, the non-breaching party is relieved of its obligations under the agreement."). Williamson argues that Defendants materially breached the agreement by

---

862 A.2d 539, 548 (N.J. Super. Ct. App. Div. 2004); Klesh v. Coddington, 684 A.2d 530, 533 (N.J. Super. Ct. L. Div. 1996). Here, the underlying cases upon which Wilson grounds his malicious prosecution claim are Williamson's criminal complaints. Thus the special grievance requirement is inapplicable.

removing her from the School even when she abided by NPS's visitation policies. Defendants dispute that Williamson followed NPS's visitation policies and counter that Williamson was disruptive and threatening. Whether Defendants materially breached the settlement agreement, excusing Williamson's performance thereunder, is a disputed question of fact, which precludes summary judgment on this issue.

## IV.  CONCLUSION

Disputed issues of fact preclude the disposition on summary judgment of any issue that the parties have presented to the Court. Accordingly, Williamson's motion for summary judgment and Defendants' cross-motion for summary judgment are **DENIED**.

s/ William J. Martini
William J. Martini, U.S.D.J.